## Brown et al. v. Smith.
(Decided March 12, 1937.)

L. R. NUNN and M. O. SCOTT for appellants.

E. C. TERRY, CASS WALDEN and A. J. THOMPSON for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

This case grew out of the disputed location of a boundary line, and we will understand it better if we first examine the history of the land involved, which we have in a large measure copied from appellants' brief wherein they say:

### History as Stated by Appellants.

"In the year 1815 George Pickett and wife conveyed to Reuben Alexander what is known as 'The Old Military Survey.' This tract of land according to the metes and bounds description contains two thousand acres, but for some reason, not apparent, the deed recites: 'By a more recent survey 1876 acres.'

"This survey Reuben Alexander conveyed in the year 1816 to four different persons in four different tracts designated as lots Nos. 1, 2, 3, & 4, beginning with lot No. 1 at the southern end of the survey. The metes and bounds description as set out in the deeds is 200 poles by 400 poles, but the deeds of lots No. 1, 2, & 3, recite 'containing 469 acres more or less.' The deed to lot No. 4 does not give any number of acres, but however it may be, whether the survey contains 2000 acres or 1876 acres, it is apparent that lot No. 4 contains the same number of acres as the rest, because the metes and bounds description is the same in all of the deeds, and if the survey only contains 1876 acres more or less and the first three lots each contain 469 acres more or less,' then with mathematical certainty it follows that lot No. 4 must contain 469 acres more or less. We are concerned in this case only with lots 3

& 4. The John Creacy family acquired lot No. 3, and the Smith family acquired lot No. 4. Lot No. 3 was conveyed to the John Creacy family one month before lot No. 4 was conveyed to the Smith family. Finally Louis Smith, Richard Smith, and Buford Smith acquired lot No. 4, and John W. Creacy acquired lot No. 3. It is significant and a point in this case to remember that the proof will show that Buford Smith's land, is on the east end of lot No. 4."

## What Caused the Shortage.

A reference to this deed which is in this record shows this old survey as there described thus:

"Beginning at a poplar, beech and sugartree on the bank of the Creek 400 poles above buckeye tree marked G. N. I. and blazed on a Buffalo road, running thence N. 72 degrees E. 200 poles to a sugartree and beech; thense S. 18 degrees East 800 poles crossing a branch to a hickory, ash and white oak; then S. 72 degrees West 400 poles crossing a branch and the Creek to a white oak, hickroy and Spanish oak; thence N. 18 degrees West 800 poles to a white walnut, white ash and sugartree, thence North 72 degrees East 200 poles crossing the creek to the beginning, containing the agreed survey 2000 acres and by a late survey 1876 acres more or less."

(To avoid confusing the reader we will call attention to the fact that this description begins in the middle of a line S 72 E 400 poles, one half of which is the first call of this survey and the other half is the last call).

## Our Conclusions.

If this land did not contain 2,000 acres, then it was evident this tract could not be 800 poles long and 400 poles wide.

This land was before June 10, 1816, resurveyed and subdivided into four tracts by running three parallel lines across it. With the exception of No. 4, each of the four rectangles into which the survey was divided was described as extending "400 poles S. 72 E. 200 poles N. 21½ E.," and containing 469 acres more or less. In other words, they simply divided by four the shortage that had been discovered for four times 469 is 1,876. We know the tract had been resurveyed because the line

that had formerly been described as running N. 18 E. is described in this partition as running N. 21½ E.

Each of these four partition descriptions shows it is erroneous for if these rectangles, which were stated to be 200 poles by 400 poles in extent, were in fact that size, each would contain 500 acres, yet three of them are described as containing 469 acres and of the other one the acreage is not stated.

We would have been much assisted by a careful resurvey of the whole of the original military survey and each of the four rectangles into which it was subdivided, but the litigants did not favor us with such; they simply surveyed about here and there. No complete survey was made of either of the tracts, the line between which is in dispute, but there was enough surveying done to show the error was in the length and not the breadth of the original survey, and that this error was carried into the subdivision, so that each of the smaller tracts that were supposed to be 400 poles long and 200 poles wide are less than 200 poles wide and contain less than 500 acres.

It is perfectly evident that it has been known for over 120 years that the N. 18 W. and S. 18 E. lines were short, and that in the partition made 121 years ago this shortage was divided, and that none of the four rectangles of that subdivision were 200 poles in width and all were known to be of less width than 200 poles, and the lines between these subdivisions are located now where they have been for 121 years. Appellee Buford Smith is a greatgrandson of the Josiah Smith to whom the rectangle No. 4 was conveyed in 1816, and the appellants, W. D. Brown and G. N. Brown, are the vendees of John W. Creacy who is a descendant of and derived title from the John Creacy to whom rectangle No. 3 was conveyed in 1816.

### The Judgment Recites:

"The evidence shows that after the defendants, W. G. Brown and G. N. Brown, became the owners of the Creacy land, a controversy arose between them and the plaintiff, Buford Smith, as to the location of the boundary line between the lands of Buford Smith and said Browns; and that said defendants undertook to locate the boundary line between them and plaintiff by a survey of the bound-

ary of land they had purchased from the said John W. Creacy and that in running the East and West line of said boundary between the Creacy land and the Buford Smith land, said East and West line ran parallel, 10 poles North, of an East and West line, claimed by the plaintiff Buford Smith to be the boundary line between the Smith tract and the Creacy tract; and that after the survey of the said Creacy land the defendants, W. D. Brown and G. N. Brown, proceeded to cut, or have cut, marketable timber, such as hickory and oak on this strip of land approximately 10 poles in width, and as the evidence shows for about sixty poles in length.

"The evidence shows that the line claimed by the plantiff Buford Smith is an old established line, between the Smith land and the Creacy land, that it has been recognized as such by the cleared fields on either side of same, by a division fence, marked trees, and an artificial ditch, and a stone corner planted at the West end of this old and established line of 400 poles, between lot No. 3, known as the Creacy land and lot No. 4, known as the Smith land; and that heretofore men cutting the timber on the Creacy side, or the Smith side, cut timber up to that old line and that same was not in dispute, or controversy, until this complaint arose between plaintiff and defendants; and that said line had been known and recognized, as the line between the Creacy land and the Smith land, by witnesses testifying, for more than forty years, and the same being unrefuted, is taken as true. And since the line run by a survey of the Creacy land parallel with said line, and 10 poles North of same, is not supported by marked objects, or any evidence of a line heretofore, the Court is of the opinion and so adjudges that the old established line claimed by the plaintiff Buford Smith, and indicated at the West end thereof by a stone, as a corner, between lot No. 3 and lot No. 4 is the true boundary line between the Smith land and the Creacy land and that by its long continued recognition for forty years and more under claim of title and undisputed by the adjacent owners the said defendants, W. D. Brown and G. N. Brown acquired no title to any land North of said old established line and between

tracts No. 3 and 4; and that their act in cutting timber North of said established line and on the land of plaintiff, Buford Smith, was a trespass against his said property; and that he is entitled to recover of them for said timber cut.''

The judgment of the trial court in locating this division line between rectangles 3 and 4 as ''beginning at a stone second corner of No. 3 and first corner of No. 4 of said military survey and running thence N. 72 E. 400 poles'' is correct.

On June 10, 1816, Reuben Alexander and wife conveyed to Zebulin Norris a portion of this military survey as subdivided and described it as 200 poles by 400 poles in extent and containing 469 acres. On same day and by a similar description they conveyed a tract to Joseph Creacy, and on same day and by a similar description they conveyed a tract to John Creacy.

Nothing was done until the 29th of August, 1816, when they conveyed to Josiah Smith a tract which they described as being 200 poles by 400 poles in extent, but they said nothing about how much it contained.

These tracts are referred to in this record in this way: The Norris tract as No. 1, the Joseph Creacy tract as No. 2, the John Creacy tract as No. 3, and the Josiah Smith tract as No. 4. Just why they are so referred to we do not know. All these deeds are recorded in Deed Book C, the Smith deed at page 112, the John Creacy deed at page 113, the Norris deed at page 115, and the Joseph Creacy deed at page 116. The Norris deed was recorded August 29, 1816, the other three June 10, 1916.

Appellants seem to have an idea that because the deed to Smith was made last that it must yield and that the John Creacy tract is entitled to its 200 poles in width no matter how much that may encroach on the Smith tract. No authority is cited in support of the contention, but no matter how much they had, it would not be enough to prevail over division lines made 120 years ago that are shown by witnesses to have been established, known and recognized for over 40 years.

The appellants certainly cannot complain of the $25 adjudged plaintiff for the timber they had cut and the court properly quieted the title of the plaintiff.

Judgment affirmed.